UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVANDER JACOB VARELA, | ) | CIVIL ACTION NO. 4:21-CV-25 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.    INTRODUCTION

Plaintiff Evander Jacob Varela, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision must be VACATED.

II.    BACKGROUND & PROCEDURAL HISTORY

On February 9, 2019, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 15; Doc. 14-2, p. 16).  In this application, Plaintiff alleged he became disabled as of September 30, 2018, when he was twenty-two years old, due to the following conditions: type 1 diabetes; insulin dependent; pain in stomach, lower back, and legs; no muscle support in lower back; hard to stand for long periods of time; at times hard to sit up straight; and impulsive movement of legs and feet. (Admin. Tr. 196; Doc. 14-7, p. 6). Plaintiff alleges that the combination of these conditions affects his ability to lift; bend; stand; walk; kneel; and complete tasks. (Admin. Tr. 212; Doc. 14-7, p. 22). Plaintiff has a limited education. (Admin. Tr. 23; Doc. 14-2, p. 24). Plaintiff has no past relevant work. *Id.*

On May 16, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 14-2, p. 16). On October 3, 2019, Plaintiff's application was denied on reconsideration. *Id.* On October 24, 2019, Plaintiff requested an administrative hearing. *Id.*

On May 12, 2020, Plaintiff, assisted by his counsel, appeared and testified by telephone during a hearing before Administrative Law Judge Randy Riley (the "ALJ"). (Admin. Tr. 15, 25; Doc. 14-2, pp. 16, 26). On May 28, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 25; Doc. 14-2, p. 26). On July 23, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 170; Doc. 14-5, p. 29).

On November 3, 2020, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 14-2, p. 3).

On January 6, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, ¶ 18). As relief, Plaintiff requests that the Court award benefits under Title XVI. (Doc. 1).

On May 14, 2021, the Commissioner filed an Answer. (Doc. 13). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 13, ¶ 11). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 14).

Plaintiff's Brief (Doc. 19) and the Commissioner's Brief (Doc. 20), have been filed.  Plaintiff did not file a reply. This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The

Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on May 28, 2020.

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.   Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

With these standards in mind, I now turn to the merits of this case.

IV.   DISCUSSION

Plaintiff raises the following issues in this statement of errors:

1.    "Whether the Administrative Law Judge erred and abused his
discretion by failing to consider the limitations from Plaintiff's
diabetes mellitus, in setting forth Plaintiff's residual functional
capacity?" (Doc. 19, p. 1).

2.    "Whether the Administrative Law Judge erred and abused his
discretion in failing to consider the limitations from Plaintiff's
diagnosed and treated neuropathy in his legs and feet, back pain,
suicidal thoughts, BiPolar Disorder, PTSD, anxiety with panic attacks,
and depression, as the Administrative Law Judge improperly
determined these disorders to be non-severe?" (Doc. 19, p. 1).

3.    "Whether the Administrative Law Judge erred and or abused his
discretion in basing his findings regarding Plaintiff's residual
functional capacity on a single-decision maker and in not developing
the record?" (Doc. 19, p. 2).

Having reviewed the Brief, I construe Plaintiff's arguments as raising the
following issues:

1.    Whether the ALJ's assessment of Plaintiff's mental health
impairments at step two is supported by substantial evidence.

2.    Whether the ALJ properly evaluated Plaintiff's diabetes at step three.

3.    Whether the ALJ Properly Evaluated the Medical Opinion Evidence

4.    Whether the ALJ failed to properly develop the record by ordering a
consultative examination

5.    Whether the ALJ considered Plaintiff's testimony about his lack of
access to health care before partially discounting Plaintiff's statements
about the intensity, persistence, and limiting effects of his
impairments.

6.     Whether the ALJ accounted for all of Plaintiff's credibly established limitations in the RFC assessment.

A.     THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his May 2020 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between February 6, 2019 (Plaintiff's application date) and May 28, 2021 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 17; Doc. 14-2, p. 18).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment: diabetes mellitus. *Id.* The ALJ assessed that the following impairments were medically determinable but non-severe during the relevant period: slight levoscoliosis of the lumbar spine; GERD; depression; bipolar disorder; post-traumatic stress disorder; and substance use disorder (marijuana). (Admin. Tr. 18; Doc. 14-2, p. 19).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 20; Doc. 14-2, p. 21).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in the full range of medium work as defined in 20 C.F.R. § 416.967(c). *Id.*

At step four, the ALJ found that Plaintiff had no past relevant work. (Admin. Tr. 23; Doc. 14-2, p. 24). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 24; Doc. 14-2, p. 25). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Cleaner II, DOT #919.687-014; assembler, electrical accessories DOT #729..687-010; and Table Worker, DOT #739.687-182. *Id.*

B.   WHETHER THE ALJ ACCOUNTED FOR ALL OF PLAINTIFF'S CREDIBLY ESTABLISHED LIMITATIONS IN THE RFC ASSESSMENT

One oft-contested issue in Social Security Appeals relates to the claimant's residual capacity for work in the national economy. As discussed above, a claimant's RFC is defined as "the most [a claimant' can still do despite [his or her] limitations," taking into account all of a claimant's medically determinable impairments. 20 C.F.R. § 416.945. In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe. *Id*. Although such challenges most often arise in the context

of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

Plaintiff argues:

The RFC set forth by the ALJ in this matter is that Claimant has the residual functional capacity (hereinafter referred to as "RFC") to perform the full range of medium work, with no additional limitation. (Admin. Tr. 20-23). Despite evidence of regarding some issues with thought process, memory, concentration and focus due to multiple mental health related issues (noted later herein), the RFC from the ALJ contains insufficient non-exertional limitations, as will be discussed and highlighted below. (Admin. Tr. 20-23). The ALJ failed to consider the record of this claim as a whole, as opposed to focusing only on those treatment notes which support his determination

regarding claimant's RFC, as it related to his finding that Claimant is non-compliant with regards to his insulin and treatment, without recognizing that Claimant ahs had difficulty with treatment due to being homeless, having transportation and insurance issues, as well as issues seeing an endocrinologist.

In the instant matter, as it relates to Claimant's severe impairments identified by the ALJ, the medical records establish the following limitations: (1) regular emergency room visits (sometimes more than once per month) for diabetic ketoacidosis events, between February, 2018 and the hearing, (2) progressive weight loss, fatigue, nausea and related issues with severe muscle wasting and a BMI of 16, and (3) related issues which impact Claimant on an ongoing basis, such that no month goes by without Claimant needing emergency room treatment, often on an inpatient basis. (Admin. Tr. 280, 289, 291, 328-332, 395, 413, 472, 496, 516, 521, 619, 674, 757, 810, -812, 857, 892, 966-967, 982, 1030, 1059, 1082, 1152, 1168, 1174, 1227, 1282, 1507, 1572, 1642, 1668, 1683, 1717, 1784, 1798, and 1829).

Claimant's testimony confirmed the following limitations: (1) he has moved around quite a bit due to being homeless, (2) he can only walk 2 or 3 blocks before getting tired, (3) he checks his blood sugars throughout the day, but tires easily, (4) he has missed necessary treatment due to being homeless and having no transportation, (5) he lays and sleeps 2 to 3 hours in the daytime, (6) he is on insulin, but has trouble managing it due to the lack of an endocrinologist, (7) he has often run out of insulin, being unable to get back to the doctor for a refill in time, (8) he has required almost monthly emergency room treatment since May, 2018, for diabetic ketoacidosis, and sometimes due to being in a coma, and (9) he would have low blood sugars while working. (Admin. Tr. 35-46). The woman he lives with, who he has lived with on and off for the past few years, confirmed that Claimant take his blood sugars on a regular basis, and still has issued with his diabetes that require regular emergency room care. (Admin. Tr. 47-48). These disorders limitations, and related issues, which are verified by both Claimant and the medical record, should not have been ignored by the ALJ in terms of Claimant's limitations in his RFC, as there is no evidence in the record to contradict the fact that Claimant

actually experiences what he alleged on a regular basis as a result of his uncontrolled diabetes, which, if properly considered, would have rendered the Claimant incapable of sustained work activity. The ALJ erred and or abused his discretion in failing to consider the impact of Claimant's documented issues regarding his diabetes mellitus, including: (1) multiple diabetic ketoacidosis events, where Claimant loses consciousness and is in a coma, requiring hospitalizations, typically more than one time per month, as a result of his inability to control his diabetes, (2) periods of time where Claimant is homeless, unable to obtain medical care due to lack of insurance, and is treated by Crisis intervention for suicidal thoughts, (3) treatment needed due to suicide attempts, (4) periods of increased pain and neuropathy, (5) periods of hyperglycemia, and (6) obvious ongoing issues with control and treatment of his diabetes. (Admin Tr. 280, 291, 328-330, 395, 413, 472, 496, 500-501, 508, 516, 521, 619, 674, 683, 757, 810-812, 857, 892, 966-67, 982, 1030, 1059, 1082, 1152, 1168, 1174, 1227, 1282, 1327, 1355, 1461, 1507, 1572, 1603, 1611-1612, 1642, 1668, 1683, 1717, 1772, 1784, 1798, and 1829).

. . . .

. . . . The ALJ should have, at the very least, included the need for additional break time on a daily basis, absenteeism from work at least twice per month, and being off task part of the day to deal with the above identified issues related to his diabetes.

Despite the above, very little of which was mentioned in the ALJ's decision regarding non-exertional limitations related to Claimant multiple severe mental-health related limitations, despite documentation thereof, the ALJ offers no limitations in the Claimant RFC regarding his (1) regular attendance at work, (2) need to take unscheduled breaks, (3) ability to remain on task, or (4) need for specialized instruction, to be reminded about work requirements several times per day. (Admin. Tr. 20-23). The VE testified that the above types of limitations would render him unemployable. (Admin. Tr. 51-52). The ALJ makes almost no reference to the fact that Claimant has mental-health related issues (some of which seems to be related to Claimant's diabetes, or, at the very least, the cause of

Claimant's homelessness), which is further evidence that the ALJ did not consider the fact that Claimant's multiple severe mental-health related issues would impact his ability to work due to the issues with his attendance at work, need to take unscheduled breaks, and ability to remain on task, which is the cause of his inability to work even on a part-time basis. (Admin. Tr. 190-191).

(Doc. 19, pp. 13-18).

In response, the Commissioner argues:

Substantial evidence support the ALJ's finding that Plaintiff could perform a full range of medium work (Tr. 20-23). Plaintiff's claims of error and abuse of discretion are nothing more than an impermissible request for this Court to reweigh the evidence, one that is prohibited under the substantial evidence standard (Pl.'s Br. at 11-23). *Williams v. Sullivan*, 970 F.2d at 1182; *Rutherford*, 399 F.3d at 552. As explained below, the ALJ carefully evaluated the evidence, including Plaintiff's subjective complaints, his limited objective findings, activities of living, and the opinion evidence and found a restrictive RFC that accounted for all of Plaintiff's record established limitations from his severe and non-severe impairments (Tr. 20-23). Substantial evidence supports this finding.

RFC refers to the most the claimant can still do despite the limitations caused by his impairments. 20 C.F.R. § 416.945(a). It is an administrative finding, not a medical opinion, which the ALJ alone is responsible for making. 20 C.F.R. §§ 416.946(c), 416.927(c)(2). The ALJ independently formulates the RFC finding based on the entire record, medical and otherwise. *See* 20 C.F.R. § 416.945(a)(3). Importantly, it is Plaintiff's burden to prove his functional limitations. 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003) (comments to final rule); 20 C.F.R. § 416.912(a); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

The ALJ restricted Plaintiff's RFC to medium work after considering the relevant evidence during the relevant period (Tr. 20-23). Though Plaintiff relies heavily on evidence prior to his application date, the

relevant period involves a relatively small window of time (Pl.'s Br. at 11-23). In the decision, the ALJ discussed how Plaintiff's longitudinal treatment records during this period supported the RFC finding, but did not support greater limitations (Tr. 20-23).

Specifically, the ALJ discussed Plaintiff's primary care records, which show that his diabetes mellitus was controlled with insulin and that he denied symptoms when he took his medication regularly (Tr. 1603, 1617-19, 1649). The ALJ discussed Plaintiff's longitudinal medical history, including his emergency room records, which contained unremarkable musculoskeletal, mental, and neurological signs (Tr. 21-22, 287, 291, 1615, 1617-18, 1646-47, 1652, 1658, 1661, 1696, 1766, 1817). The ALJ also considered Plaintiff's treatment for hyperglycemia and ketoacidosis and explained that these events were generally related to noncompliance and improved with insulin (Tr. 20-21, 280, 282, 287, 291, 1603, 1798, 1817). As a result, Plaintiff's clinical signs and response to treatment did not support greater limitations.

The ALJ further explained that the opinion evidence supported the RFC finding (Tr. 22-23). Under the controlling regulatory framework, the ALJ considered the supportability and consistency of the state agency psychologists and physicians and found they were persuasive (Tr. 22-23). In explaining this factual finding, the ALJ stated that state agency consultants provided a narrative explanation to support their findings (Tr. 22-23). The ALJ explained that their findings were consistent with the record, including Plaintiff's unremarkable musculoskeletal examinations, response to treatment for his diabetes, and unremarkable mental findings (Tr. 22-23). This satisfies the regulations, which state that, the ALJ must explain the supportability and consistency of each medical source's opinions. *See* 20 C.F.R. § 416.920c.

Lastly, the ALJ considered Plaintiff's activities of daily living and his allegations that these are significantly limited (Tr. 22). However, the ALJ determined that Plaintiff's statements regarding his ability to perform personal care tasks and the lack of objective evidence did not support the level of limitations alleged (Tr. 22).

In sum, based on the narrow adjudicatory period and the evidence before him, the ALJ identified "such relevant evidence as a reasonable mind might accept as adequate to support [his] conclusion" about Plaintiff's RFC. *Biestek*, 139 S. Ct. at 1154. In doing so, the ALJ acknowledged that Plaintiff's physical symptoms limited his ability to perform more than medium exertion (Tr. 22-23). However, he also explained why Plaintiff's clinical findings and response to treatment did not support additional physical and mental limitations (Tr. 21-23). Respectfully, nothing more was required.

Although Plaintiff highlights evidence that he believes supported work-preclusive restrictions (Pl.'s Br. at 11-18), his argument lacks merit. In terms of the relevant period, Plaintiff refers to testimony and evidence already considered by the ALJ when he accounted for Plaintiff's work-related restrictions. (Tr. 17-23). Even where conflicting evidence would allow reasonable minds to differ, this Court should defer to the ALJ's determination when it enjoys substantial evidentiary support, as it does here. *Hartranft v. Apfel*, 181 F.3d at 360.

(Doc. 20, pp. 17-21).

Plaintiff argues that the ALJ, at the very least, should have included that Plaintiff would require additional breaks, would be absent from work two times per month, and would be off task. I find there is considerable merit to Plaintiff's argument that the ALJ improperly disregarded an attendance limitation, supported by records showing that Plaintiff was hospitalized for multiple days due to complications with diabetes during at least four consecutive months.

In his decision, the ALJ summarized the records related to Plaintiff's frequent inpatient hospitalizations as follows:

the claimant received inpatient treatment during April 2019 and treatment at an emergency room department during August 2019, September 2019, October 2019, and November 2019 for symptoms pertaining to his diabetes mellitus (Exhibits 1F, 5F, 6F, 7F, and 12E). However, the claimant's medical record[s] also document that the claimant was non-compliant with medication pertaining to his diabetes on multiple occasions (Exhibits 1F, 7F). Notably, the claimant's medical records also indicate his hypoglycemic episodes and/or bouts of diabetic ketoacidosis are mostly due to medication non-compliance. (Exhibit 7F). Moreover, while the claimant suggested his non-compliance was due to lack of shelter (Testimony of Michael Washington [sic]), the claimant indicated during his testimony that he decompensated when he did have housing (Testimony of Evander Jacob Velander [sic]). Further, the claimant's medical assistance benefits are not dependent on housing. Additionally, the claimant's medical records do not indicate the claimant received either emergent or inpatient treatment for his symptoms pertaining to his diabetes subsequent to November 2019 (Exhibits 1F-7F).

(Admin. Tr. 21). The medical records establish that Plaintiff was admitted to the hospital with diabetic ketoacidosis on the following dates during the relevant period: August 31, 2018 through September 4, 2018 (admitted for DKA without coma), (Admin. Tr. 674); October 5, 2018 through October 7, 2018 (admitted for DKA without coma), (Admin. Tr. 619); November 8, 2018 through November 14, 2018 (admitted due to hospital with weakness fatigue, dizziness), (Admin. Tr. 518); December 17, 2018 through December 21, 2018 (admitted for DKA without coma), (Admin. Tr. 413); January 29, 2019 through February 1, 2019 (admitted with DKA, blood sugar 553), (Admin. Tr. 328); April 11, 2019 through April 12,

2019 (admitted for DKA with blood sugar of 593), (Admin. Tr. 280); October 23, 2019 through October 26, 2019 (admitted for flu infection and DKA, blood sugar 717), (Admin. Tr. 1717); and November 13, 2019 through November 14, 2019 (admitted for DKA with blood sugar of 392), (Admin. Tr. 1683).[3]

Plaintiff was seen at the emergency department and not admitted on: April 18, 2018 (presented to ED with blood glucose of 215), (Admin. Tr. 1154); May 22, 2018 (presented to ED with blood sugar of 720), (Admin. Tr. 1061); May 31, 2018 (seen at ED for mental health issues, blood sugar level was over 400), (Admin. Tr. 1030); November 4, 2018 (presented to ED with blood sugar level over 500), (Admin. Tr. 606); November 20, 2018 (presented to ED with anxiety symptoms, but reported that his blood glucose level was 335 before coming in, was measured as 327 by hospital), (Admin. Tr. 496); December 2, 2018 (presented to ED with glucose level of 423), (Admin. Tr. 484); December 7, 2018, (had a blood glucose level of 508 at medical appointment, physician called EMS), (Admin. Tr. 472);

---

[3] Plaintiff was also frequently admitted to the hospital prior to his onset date: April 28, 2018 through May 1, 2018 (admitted with DKA, blood sugar 792), (Admin. Tr. 1082); June 19, 2019 through June 21, 2018 (admitted with DKA, blood sugar above 700), (Admin. Tr. 982); June 29, 2019 through July 1, 2018 (admitted with DKA, blood sugar 753), (Admin. Tr. 892); July 9, 2018 through July 10, 2019 (admitted with DKA, blood sugar 343), (Admin. Tr. 857); August 22, 2018 through August 23, 2018 (admitted with DKA, blood sugar in the 400s), (Admin. Tr. 810); and August 27, 2018 through August 29, 2018 (admitted with DKA and blood sugar of 662), (Admin. Tr. 757).

January 8, 2019 (lost consciousness at Wendy's and taken to ED by EMS) (Admin.

Tr. 395); August 27, 2019 (presented to ED with blood sugar of 482) (Admin. Tr.

1829); September 6, 2019 (presented to ED with blook sugar of 337) (Admin. Tr.

1801); September 8, 2019 (presented to ED for psych eval); and October 21, 2019

(presented to ED with blood sugar of 513) (Admin. Tr. 1767).

In *Kangas v. Bowen*, the claimant presented records that showed he was

hospitalized eight times in a sixteen-month period for chronic lung infections.

*Kangas v. Bowen*, 823 F.2d 775 (3d Cir. 1987).  In *Kangas*, the Third Circuit held

that frequent, repetitive periods of hospitalization may preclude the performance of

work on a regular and continuing basis. *Id.* The failure to consider the impact of

frequent hospitalizations may be a basis for remand.

In this case, the ALJ, considering objective evidence of recurrent

hospitalizations and discounted it because Plaintiff failed to follow prescribed

treatment. I find that this analysis was improper. This Court is only aware of two

Social Security Rulings that address treatment non-compliance. The First, SSR 16-

3p, authorizes ALJs to consider a claimant's compliance with prescribed treatment

when evaluating whether symptom persistence and intensity affect his or her

ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304 at *9-10

(instructing that an ALJ may consider a claimant's treatment non-compliance when

evaluating a claimant's *statements*). The second, SSR 18-3p, applies only after an ALJ finds a disabling impairment that precludes engaging in any substantial gainful activity. SSR 18-3p, 2018 WL 4945641 at *3. Neither of these situations apply to the ALJ's evaluation of the attendance limitation in this case.

The attendance limitation is supported by objective evidence showing that Plaintiff has been repeatedly hospitalized for more than two days a months, for several consecutive months due to his diabetes. I find that the ALJ's decision to exclude this limitation from the RFC assessment based solely on Plaintiff's treatment non-compliance is error.

Furthermore, the VE in this case testified that an individual who would be expected to miss more than 1.3 days per month would be unemployable. Therefore, remand is required because there is a reasonable possibility that this error could affect the outcome of this case.

C.   PLAINTIFF'S REMAINING ARGUMENTS

Because I have found a clear basis for remand I need not address the remaining arguments. To the extent any further error exists, it may be addressed on remand.

V.    CONCLUSION

Accordingly, Plaintiff's request for relief is GRANTED as follows:

(1)    The final decision of the Commissioner will be VACATED.

(2)    This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in Plaintiff's favor.

(4)    A separate order will be issued.


Date: March 30, 2022                          BY THE COURT

                                              *s/William I. Arbuckle*
                                              William I. Arbuckle
                                              U.S. Magistrate Judge